ES / SMS/ 2018R01273

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. John Michael Vazquez |
| v. | : | Criminal No. 21-157 (JMV) |
| MATTHEW PUCCIO | : | 18 U.S.C. § 1349 |

**INDICTMENT**

The grand jury in and for the District of New Jersey, sitting in Newark, charges:

1. Unless otherwise indicated, at all times relevant to this Indictment:

    a. Defendant MATTHEW PUCCIO was a resident of New Jersey.

    b. Physician-1 was a resident of New Jersey and a medical doctor licensed to practice medicine in New Jersey.

    c. Physician-2 was a resident of New Jersey and a medical doctor licensed to practice medicine in New Jersey.

    d. Marketing Company-1 was a marketing company involved in the marketing and sales of prescription compound medications, such as various scar creams, pain creams, and metabolic supplements.

    e. CC-1 was a resident of New Jersey and a sales representative for Marketing Company-1.

    f. In New Jersey, the State Health Benefits Program ("SHBP") offered medical and prescription drug coverage to qualified state and local

government public employees, retirees, and eligible dependents. For example, the New Jersey School Employees' Health Benefits Program ("SEHBP") offered medical and prescription drug coverage to qualified local public employees in public school systems, universities, and colleges.

### The SHBP Employee Health Benefit Program

g. The SHBP offered prescription drug coverage, including compounded medications marketed by Marketing Company-1.

h. A Pharmacy Benefits Management Company ("PBM-1") provided pharmacy benefit management services for SHBP beneficiaries pursuant to a contract with the State of New Jersey. On behalf of the SHBP, PBM-1 adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. PBM-1 then billed the State of New Jersey based on the amount paid to the pharmacies for claims on behalf of SHBP beneficiaries.

### Compounding

i. In general, "compounding" was a practice in which a licensed pharmacist, or a licensed physician, combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient.

Pharmacies engaged in the practice of compounding were referred to as "compounding pharmacies."

      j.    Compounded drugs were not approved by the Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

      k.    Generally, compounded drugs were prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. Compounded drugs also could be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

### The Compounding Fraud Scheme

2.    Starting at least as early as in or around November 2014 and continuing through at least in or around March 2016, companies marketing various compounded medications (the "marketing companies") and certain compounding pharmacies began targeting individuals covered under health insurance plans with prescription benefits that paid for various compounded medications (the "paying health plans") because the compounded medications could be billed to paying health plans at substantially higher rates than a FDA-approved drug therapeutic equivalent.

3. During the same time period, the SHBP offered health insurance coverage under a paying health plan. The SHBP, the SEHBP, and the other paying health plans each were "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

4. Marketing companies recruited and paid individuals as "sales representatives" to either: (1) obtain compounded medications, regardless of medical necessity, for themselves ("self-prescriptions") or family members through their paying health plans; or (2) recruit others with paying health plans to obtain compounded medications, regardless of medical necessity.

5. For the marketing companies to profit, they either had direct relationships with certain compounding pharmacies, or affiliated themselves with other marketing companies that had relationships, either directly or indirectly, with other compounding pharmacies. Through these various relationships, a marketing company agreed to direct prescriptions to certain compounding pharmacies, and in exchange, the compounding pharmacy would pay the marketing company a percentage of the reimbursement amount for each successfully adjudicated claim referred by that marketing company and its sales representatives.

6. Marketing companies and compounding pharmacies encouraged their sales representatives to recruit other sales representatives, or bring other individuals into the scheme "under" them. Any individual recruited would be considered a sales representative's "downline." The marketing companies and/or compounding pharmacies paid sales representatives a portion of the

reimbursement amount they received for: (1) each prescription the sales representative directly caused to be filled, including self-prescriptions and family member prescriptions; and (2) each prescription attributable to those in the sales representative's downline.

### The Conspiracy

7.  From in or around November 2014 through in or around March 2016, in the District of New Jersey and elsewhere, the defendant,

**MATTHEW PUCCIO,**

did knowingly and intentionally conspire and agree with others to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program, as defined by Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money owned by, and under the custody and control of, a health care benefit program in connection with the delivery of or payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

### Goal of the Conspiracy

8.  It was the goal of the conspiracy for defendant MATTHEW PUCCIO and others to fraudulently obtain money by causing the submission of false and fraudulent insurance claims for medically unnecessary compounded prescription medications to various paying health plans.

## Manner and Means of the Conspiracy

9. It was a part of the conspiracy that defendant PUCCIO acted as a "sales representative" for Marketing Company-1. As part of this scheme, defendant PUCCIO received a commission for every prescription for a compound medication that PUCCIO or other sales representatives he had recruited caused to be filled.

10. It was further a part of the conspiracy that defendant PUCCIO, CC-1, and others recruited patients who were beneficiaries of paying health care plans to request prescriptions for compound medications, regardless of medical necessity. Some of the patients defendant PUCCIO and CC-1 recruited were beneficiaries of either the SHDP or the SEHBP.

11. It was further a part of the conspiracy that defendant PUCCIO, and others, induced Physician-1 and Physician-2 to sign medically unnecessary prescriptions ordering compound medications for the beneficiaries defendant PUCCIO and others had recruited. Thus, at least some of the medically unnecessary prescriptions ordered by Physician-1 and Physician-2 as a result of the scheme were reimbursed through the SHDP or SEHBP.

12. It was further a part of the conspiracy that, as a result of defendant PUCCIO and CC-1's participation in the scheme, from at least as early as in or around November 2014 through in or around March 2016, defendant PUCCIO caused significant loss to the paying health plans.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

13. The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture, pursuant to 18 U.S.C. § 982(a)(7).

14. Upon conviction of the Federal health care offense (as defined in 18 U.S.C. § 24) alleged in this Indictment, defendant PUCCIO shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense (as defined in 18 U.S.C. § 24) alleged in this Indictment.

### Substitute Assets Provision

15. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third person;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).



*Rachael A. Honig*
RACHAEL A. HONIG
Acting United States Attorney

CASE NUMBER: 21- 157 (JMV)

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

MATTHEW PUCCIO

# INDICTMENT FOR

18 U.S.C. § 1349



*ACTING UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Emma Spiro
Sean M. Sherman
*ASSISTANT U.S. ATTORNEYS*
*973-645-2746*